**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Andre R. Locke, Sr.,

Petitioner-Defendant,

v.

United States of America,

Respondent-Plaintiff.

Civil No. 04-5102 (DWF)
Criminal No. 02-5(1) (DWF/AJB)

**MEMORANDUM**
**OPINION AND ORDER**

---

Andrew Raysha Locke, *Pro Se*, Petitioner-Defendant.

Joseph T. Dixon, III, Assistant United States Attorney, United States Attorney's Office, counsel for Respondent-Plaintiff.

---

## INTRODUCTION

This matter is before the undersigned United States District Judge on Petitioner-Defendant Andre R. Locke, Sr.'s ("Petitioner-Defendant") motion to vacate, set-aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Petitioner-Defendant asserts the Court's sentence violated his Sixth Amendment right to trial by jury in light of *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). The Government opposes Petitioner-Defendant's motion.

## BACKGROUND

Petitioner-Defendant is currently incarcerated at the Federal Correctional Institution in Waseca, Minnesota. He is currently serving a 78-month sentence imposed by this Court for violating 18 U.S.C. § 2113(a) (bank robbery). Petitioner-Defendant was sentenced on March 6, 2003. Petitioner-

Defendant admitted that he robbed Vermillion State Bank in Rosemont on December 28, 2001. Petitioner-Defendant also acknowledged that he entered the bank wearing a mask and carrying a BB gun, at which time he jumped over the teller counter and instructed the victim tellers to go to the bank's safe. One of the tellers then filled the bag with money and gave it to Petitioner-Defendant. Petitioner-Defendant ran out of the bank with approximately $39,900 in stolen bank deposits. Petitioner-Defendant stated that, prior to exiting the bank, he stopped running for a moment and contemplated terminating the robbery. However, he proceeded to exit the bank and driveway. Shortly thereafter Petitioner-Defendant crashed the getaway car into trees and was knocked unconscious. The BB gun and the stolen money were located in the back seat of the vehicle. Petitioner-Defendant reported that he purchased a stolen vehicle from an acquaintance the morning of the day of the robbery, as he needed a vehicle, and used the vehicle as the getaway car in the robbery. Petitioner-Defendant stated that, prior to the robbery, he consumed alcohol and watched a movie that helped "trigger" the idea of robbing a bank. Petitioner-Defendant denies any involvement in the car jacking that occurred on December 27, 2001. On September 5, 2002, subsequent to a testimonial hearing, the Court ruled that the Government had proved that the instant offense involved carjacking, which resulted in a two-level enhancement, pursuant to 2B3.1 U.S.S.G. § 2B3.1(b)(5). The base offense level was 20, pursuant to section 2B3.1(a). The two-level increase was given because a bank was involved. Because Petitioner-Defendant brandished and possessed an air pistol while committing the robbery, a three-level increase was given pursuant to section 2B3.1(b)(2)(E). Because the Petitioner-Defendant stole $39,900 from the Vermillion State Bank and because the stolen vehicle used by the Petitioner-Defendant to flea the bank was worth a cash value of $29,835, Petitioner-Defendant received a two-

level increase because the total value was more than $50,000, but less than $250,000, pursuant to sections 1B1.3(a)(1)(A) and 2B3.1 Application Note 3. The Petitioner-Defendant then received a two-level enhancement because he led officers on a high speed chase, a fact that resulted in the Petitioner-Defendant crashing the car. With a total offense level of 31 and a criminal history category of 1, the presumptive imprisonment range for Petitioner-Defendant was 108 to 135 months.

It is the Court's view that the Petitioner-Defendant admitted to all of the facts that resulted in the enhancements except for the two-level enhancement for the carjacked vehicle and one of the two levels received for total value. If the value of the stolen vehicle is removed, that would create a presumptive sentence, based upon the admissions of the Petitioner-Defendant, of 78 to 97 months, based upon an adjusted offense level of 28, rather than 31. The Court, over the objection of the Government, departed downward, based upon the diminished capacity of the Petitioner-Defendant, and imposed a 78-month sentence, departing downward from a sentencing range of 108 to 135 months. The maximum statutory penalty for a robbery is 20 years. On December 28, 2004, Petitioner-Defendant filed the instant motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. Petitioner-Defendant asserts that the Court's sentence of 78 months imposed on March 6, 2003, violated his Sixth Amendment right to trial by jury in light of *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004).

**DISCUSSION**

First, the Court finds and concludes that it need not address Petitioner-Defendant's assertions in his motion under *Blakely* because the Court concludes that *Blakely* does not apply retroactively to matters on collateral review. Although the United States Supreme Court has stated that constitutional

rules of criminal procedure should always be applied retroactively to cases on direct review, such rules are generally not retroactively applicable to cases on collateral review. *See Teague v. Lane*, 489 U.S. 28, 312 (1989). Only "watershed" procedural rules, defined as those "without which the likelihood of an accurate conviction is seriously diminished," apply to sentences that have become final after direct appeal. *Id.* at 313.

While it is true that the United States Supreme Court has not yet explicitly addressed whether *Blakely* is a "watershed" procedural rule, the Court did consider a similar issue in *Schrioro v. Summerlin*, 124 S. Ct. 2519 (2004). In *Summerlin*, the Court held that the decision in *Ring v. Arizona*, 536 U.S. 584 (2002) does not apply retroactively to cases already final on direct review. In fact, prior to *Summerlin*, every appellate court to address the issue held that the decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was not retroactively applicable in cases on collateral review. *See, e.g.*, *Sepulveda v. United States*, 330 F.3d 55, 63 (1st Cir. 2003); *Coleman v. United States*, 329 F.3d 77, 90 (2d Cir.), *cert. denied*, 124 S. Ct. 840 (2003); *United States v. Jenkins*, 333 F.3d 151 (3d Cir.), *cert. denied*, 124 S. Ct. 350 (2003); *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001); *United States v. Brown*, 305 F.3d 304, 307-10 (5th Cir. 2002); *Goode v. United States*, 305 F.3d 378, 382-85 (6th Cir. 2002); *Curtis v. United States*, 294 F.3d 841, 842-44 (7th Cir. 2002); *United States v. Moss*, 252 F.3d 993, 997-1001 (8th Cir. 2001); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667-71 (9th Cir. 2002); *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002); *McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir. 2001). Consequently, Petitioner-Defendant cannot utilize *Blakely* as grounds for a section 2255 motion.

**Post-*United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005)**

In *Booker*, the United States Supreme Court held that *Blakely v. Washington* applied to the Federal Sentencing Guidelines, and that the Sixth Amendment's jury trial guarantee prohibited judges from finding facts that exposed a defendant to increased prison time. Thus, the Sixth Amendment is violated by the imposition of an enhanced sentence under the Guidelines based on a judge's determination of fact, other than a prior conviction, that was not found by the jury or admitted by the defendant. *United States v. Booker* reaffirms the holding in *Apprendi* that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Id.*

In the wake of *Booker*, the Sentencing Reform Act requires a sentencing court to regard the Guidelines range as one of many factors to consider in determining the sentence. Accordingly, the Court is not bound by the Guidelines, but must "consult" them and "take them into account when sentencing." *Booker* at 767.

There are no Sixth Amendment issues implicated in Petitioner-Defendant's case on the record before the Court. That is the case even if the Court only utilizes those facts that led to enhancements that Petitioner-Defendant admitted to and disregards the carjacking enhancement of two levels, as well as excluding the value of the getaway car. The Court would still have ended up without any downward departures at a level 28, with a presumptive sentence of 78 to 97 months.

However, there can be little doubt, in the wake of *Booker*, that the Court's sentence of 78 months is consistent with the factors and directives set forth in 18 U.S.C. § 3553(a). The Court has

subjected its sentence to post-*Booker* scrutiny, notwithstanding its conclusion regarding Petitioner-Defendant's motion pursuant to 28 U.S.C. § 2255.

**CONCLUSION**

Based upon the presentations and submissions of the parties, the Court having carefully reviewed the record in this case, including the additional memorandum submitted by the Petitioner-Defendant, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. Petitioner-Defendant Andrew R. Locke's self-styled response and request for the Court to consider his "traverse" to the Government's response to his 2255 motion is **GRANTED**.

2. Petitioner-Defendant Andrew R. Locke's motion to vacate, set aside, or correct his sentence is respectfully **DENIED**.

3. Petitioner-Defendant Andrew R. Locke's motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 is hereby **DISMISSED WITH PREJUDICE**.

Dated: March 3, 2005

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court